UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 22-184** |
| **DEANDRE CROSS** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant Deandre Cross's Motion to Dismiss the Indictment for Prosecutorial Misconduct (Doc. 126). For the following reasons, the Motion is **DENIED**.

## BACKGROUND

On August 18, 2022, Defendant Deandre Cross was charged in a one-count Indictment with assault on a federal officer in violation of 18 U.S.C. §§ 111(a)(1) and 111(b). The indictment specifically charged:

> On or about June 8, 2022, in the Eastern District of Louisiana, the defendant, Deandre Cross, did knowingly assault, resist, oppose, impede, intimidate and interfere with B.T., a Special Agent with the Department of Homeland Security, while B.T. was engaged in the performance of her official duties, and during the commission of such acts, used a deadly or dangerous weapon: to wit, a white Buick Lacrosse, and inflicted bodily injury to B.T., in violation of Title 18, United States Code, Sections 111(a)(1) and 111(b).[1]

---

[1] Doc. 1 at 1–2.

1

Now before the Court is Defendant Deandre Cross's Motion to Dismiss the Indictment for Prosecutorial Misconduct. The Government opposes.[2]

## **LEGAL STANDARD**

"Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence."[3] "The supervisory powers of a district judge . . . allow him to impose the extreme sanction of dismissal of an indictment with prejudice only in extraordinary situations."[4] The defendant must show both government misconduct that "shocks the conscience" and prejudice to the defendant.[5] In ruling on a motion to dismiss an indictment for prosecutorial conduct, a district court must "consider whether less extreme sanctions might maintain the integrity of the court without punishing the United States for a prosecutor's misconduct."[6]

## **LAW AND ANALYSIS**

Defendant alleges two specific bases of prosecutorial misconduct in support of his motion to dismiss the indictment: *Brady/Kyles* violations and spoliation of evidence. The Court considers each in turn.

---

[2] Doc. 127.
[3] McNabb v. United States, 318 U.S. 332, 340 (1943).
[4] United States v. Campagnuolo, 592 F.2d 852, 865 (5th Cir. 1979)
[5] United States v. Welborn, 849 F.2d 980, 985 (5th Cir. 1988) (citing United States v. Fulmer, 722 F.2d 1192, 1195 (5th Cir. 1983); United States v. Campagnuolo, 592 F.2d 852, 865 (5th Cir. 1979)); United States v. Baskes, 433 F. Supp. 799, 806 (N.D. Ill. 1977) (quoting Rochin v. California, 342 U.S. 165, 172 (1952)) ("A reading of defendants' cases, however, also demonstrates that 'supervisory powers' remain a harsh ultimate sanction, and are more often referred to than invoked. They are apparently kept in reserve for 'conduct that shocks the conscience[.]'").
[6] *Welborn*, 849 F.2d at 985.

### *1.* **Brady/Kyles** *violations*

To prevail on a *Brady* claim, "a defendant must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material."[7] For dismissal of an indictment, a defendant must also demonstrate that he has been prejudiced by the prosecution.[8] The prosecution's good or bad faith is "irrelevant when the State fails to disclose to the defendant material exculpatory evidence."[9]

Defendant argues that "the government's repeated and ongoing violations of *Brady*, *Giglio*, and *Jencks*" warrant dismissal of Defendant's indictment.[10] Defendant specifically argues that a recently disclosed accident report "should have been located and disclosed at the outset of this case," and that this report "establishes that there is additional *Brady*, *Giglio*, and *Jencks* material that still has never been turned over."[11] This "additional material" referenced by the accident report is (1) a notification sent to "fleet management" regarding the hit and run and (2) another United States Marshals Service (USMS) investigation report describing the incident ("USMS Report"). The morning of trial, Defendant also notified the Court that the Government provided him that morning—for the first time—a photo of the car allegedly driven by Defendant, reflecting the damage it sustained from the collision.

As to the information disclosed by the Government to Defendant, the Court notes that "evidence that is turned over to the defense *during* trial, let

---

[7] United States v. Dvorin, 817 F.3d 438, 450 (5th Cir. 2008).
[8] *Welborn*, 849 F.2d at 985.
[9] Arizona v. Youngblood, 488 U.S. 51, 57 (1988).
[10] Doc. 126 at 13.
[11] *Id.* at 13–14 (last emphasis omitted).

3

alone *before* trial, has never been considered suppressed."[12] Accordingly, the prosecution's pretrial disclosure of the accident report and photo of the car allegedly driven by Defendant are not violations of *Brady v. Maryland* and its progeny and do not warrant dismissal of the Indictment.[13]

Defendant next asserts that the fleet management notification and USMS investigation report are "additional *Brady*, *Giglio*, and *Jencks* material that still has never been turned over,"[14] which warrants dismissal of the Indictment. Because "there have been inconsistencies throughout every report that the defense has received," Defendant argues that any other undisclosed reports must contain *Brady* or *Giglio* material.[15] Indeed, the prosecution must disclose any impeachment evidence when that evidence is material to guilt or punishment.[16] As to the fleet management notification, the Government asserts that it has confirmed that "there is no documentation regarding the notification to fleet management."[17] Because the notification documentation does not exist, it cannot be exculpatory material. Additionally, upon review of the USMS Report, which was not disclosed to Defendant, this Court finds that the USMS Report is virtually identical to the investigation report previously disclosed to Defendant, aside from additional information regarding an unrelated fugitive that is wholly immaterial to Defendant's guilt or

---

[12] United States v. Swenson, 894 F.3d 677, 683 (5th Cir. 2018) (citing Powell v. Quarterman, 536 F.3d 325, 335 (5th Cir. 2008)).

[13] Even assuming the evidence was exculpatory, suppressed by the prosecution, and material to Defendant's case, the Court must "consider whether less extreme sanctions might maintain the integrity of the court without punishing the United States for a prosecutor's misconduct." *Welborn*, 849 F.2d at 985. When asked by the Court, counsel for Defendant stated that he was not seeking a continuance, which would be a more appropriate remedy in this case.

[14] Doc. 126 at 14 (last emphasis omitted).

[15] *Id.*

[16] *Brady*, 373 U.S. at 87; Giglio v. United States, 405 U.S. 150, 154 (1972); Strickler v. Greene, 527 U.S. 263, 280 (1999).

[17] Doc. 127 at 2.

punishment.[18] Accordingly, the Court finds that the USMS Report is cumulative and therefore not encompassed by *Brady*.[19]

The Fifth Circuit has cautioned that it is "unwise to infer the existence of *Brady* material based upon speculation alone."[20] Defendant fails to specifically point to any other material that the prosecution has failed to disclose as required under *Brady*, *Giglio*, or *Jencks*. Without more than Defendant's bare conclusion that "there is additional *Brady*, *Giglio*, or *Jencks* material that still has never been turned over,"[21] the Court has been presented with insufficient evidence that such evidence exists. Accordingly, the Court cannot infer the existence of such material, and Defendant's first argument for dismissal of his Indictment fails.

### 2. *Spoliation of evidence*

Spoliation is the "'destruction or the significant and meaningful alteration' that a party has a duty to preserve."[22] Unless a defendant can show bad faith on the part of the government, however, failure to preserve potentially useful evidence does not constitute a denial of due process of law.[23]

---

[18] *See* Doc. 126-3 at 2–4.

[19] Rose v. Johnson, 141 F. Supp. 2d 661, 686 (S.D. Tex. 2001) ("[T]he *Brady* rule applies only to exculpatory and impeachment evidence, not to inculpatory or neutral evidence. It also does not encompass cumulative evidence." (internal citations omitted)).

[20] United States v. Stanford, 823 F.3d 814, 841 (5th Cir. 2016) (quoting United States v. Williams–Davis, 90 F.3d 490, 514 (D.C. Cir. 1996)) (internal quotation marks omitted).

[21] Doc. 14 at 14 (second emphasis omitted).

[22] United States v. Rodriguez-Sanchez, 741 F. App'x 214, 221 (5th Cir. 2018) (quoting Guzman v. Jones, 804 F.3d 707, 713 (5th Cir. 2015)).

[23] *Youngblood*, 488 U.S. at 58. Defendant has failed to demonstrate that the vehicle is more than potentially useful evidence. In explaining the evidence's materiality, Defendant argues that it is relevant to show that he was not "targeting" Agent Theriot. Doc. 126 at 15. However, this argument seems to suggest that a specific intent to harm or injure the federal officer is required for a conviction under 18 U.S.C. § 111. This Court has held that it is not. *See* Doc. 100. Even so, Defendant noted that the photographs it received of the vehicle before filing the motion were "not a substitute for timely photographs taken on the date of the incident *or* an opportunity to physically inspect the vehicle in a preserved form." Doc. 126 at 17 (emphasis added). Defendant has now received a photograph of the vehicle

"Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence."[24] "Mere negligence is not enough."[25]

Defendant argues that the Government spoliated material exculpatory evidence, namely the white vehicle allegedly driven by Defendant in this incident.[26] The vehicle remains in New Orleans Police Department (NOPD) custody, but Defendant argues that its condition has extensively deteriorated because it was stored in an outdoor lot and subject to all weather events.[27] In addition to outlining a series of alleged misconduct by the Government,[28] Defendant further argues that "[b]ad faith can be inferred from the above course of conduct, particularly when in combination with the government's numerous late disclosures of evidence and repeated failure to look for and produce obvious *Brady*, *Giglio*, and *Jencks* material."[29]

The exhibits attached to Defendant's motion evince a constant stream of communication whereby counsel for Defendant asked the Government where the vehicle was, and the Government advised that it "reached out" to agents regarding its whereabouts.[30] There is no evidence that the Government knew

---

but does not seek a continuance, calling into question the asserted materiality of this evidence.

[24] *Guzman*, 804 F.3d at 713 (addressing spoliation in civil context).

[25] *Rodriguez-Sanchez*, 741 F. App'x at 221 (citing Vick v. Texas Emp't Comm'n, 514 F.2d 734, 737 (5th Cir. 1975)).

[26] Doc. 126 at 15.

[27] *Id.* at 8.

[28] *Id.* at 18.

[29] Doc. 126 at 18.

[30] Doc. 126-6 at 2 (stating that "I figured [the defendant] had the car! I'll see if I can find out where it is. I do not believe we have it though."); Doc. 126-6 at 3 (stating that "[a]s far as your questions – I have reached out to the agent again (sic) and will get you [an] answer asap."); Doc. 126-6 at 5 (stating that he "[w]ill do. Just reached out to track it down."); Doc. 126-6 at 7 (stating that "[w]e are advised that the car was released to the owner. I was able to get a copy of the NOPD report generated after the collision with the RTA bus." The prosecutor provided defense counsel with the name of the alleged owner along with the NOPD report, listing his address.). The report provided to defense counsel, dated

where the vehicle was and destroyed it for the purpose of hiding adverse evidence. Defendant also fails to make any allegation that NOPD acted in bad faith in storing the vehicle. Accordingly, the Court is unable to find that the prosecution or NOPD have acted in bad faith with respect to preservation of the white vehicle allegedly driven by Defendant. Absent bad faith, this Court cannot dismiss the Indictment.[31]

The Court also notes that "[t]o constitute suppressed evidence under *Brady*, the evidence must not have been discoverable through the defendant's due diligence."[32] The vehicle in question was purchased by Defendant, but the title was not transferred to him. Defendant bonded out of jail on December 9, 2022. He and his family "tried to go retrieve the vehicle shortly after he bonded out of jail, but they were told that they could not have it back until the case was over."[33] Thus, it appears that Defendant knew where the vehicle was being held but did not "take advantage" of this knowledge by moving this Court to compel access or otherwise following up with Government for over 8 months.[34]

Moreover, even if this Court found bad faith, a more appropriate remedy would be a continuance.[35] Defendant's counsel, however, plainly stated on the

---

September 18, 2022, however, stated that "the car was left on the scene and the F.B.I. took possession of the vehicle." Doc. 126-6.

[31] *Youngblood*, 488 U.S. at 58.

[32] *Dvorin*, 817 F.3d at 450 (citations omitted).

[33] Doc. 126 at 4. The record reflects that Defendant was arrested on December 6, 2022 and released on bond on December 9, 2022. Docs. 16 & 19.

[34] *See Dvorin*, 817 F.3d at 450 (quoting United States v. Skilling, 554 F.3d 529, 575 (5th Cir. 2009)). *See also* Doc. 126-6 at 2 ("Also, do you know (or can you find out) where the car Deandre was driving ended up? I'm not sure if it's in law enforcement custody as evidence or was released to an impound lot.").

[35] Because the Court must "consider whether less extreme sanctions might maintain the integrity of the court without punishing the United States for a prosecutor's misconduct," the Court notes that the Government has provided a photo of the vehicle following the collision to Defendant. If Defendant wishes to have the image of the vehicle examined by his expert, a continuance would be the proper remedy. Counsel for Defendant, however, has declined to request such relief.

7

record that he is not requesting a continuance. Accordingly, the Court is unable to find such extraordinary circumstances as those that warrant dismissal of Defendant's indictment, and his second argument for dismissal fails.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion is **DENIED**.

New Orleans, Louisiana this 11th day of March, 2024.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**