UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                      **NO: 22-184**

**DEANDRE CROSS**                               **SECTION: "H"**

### ORDER AND REASONS

Before the Court is Defendant Deandre Cross's Motion for Acquittal Pursuant to Federal Rule of Criminal Procedure 29(c) (Doc. 144). For the following reasons, the Motion is **DENIED**.

### BACKGROUND

On August 18, 2022, Defendant Deandre Cross was charged in a one-count Indictment with forcible assault on a federal officer in violation of 18 U.S.C. §§ 111(a)(1) and 111(b). After a three-day trial, the jury deadlocked, and the Court declared a mistrial. Now before the Court is Defendant Deandre Cross's Motion for Acquittal Pursuant to Federal Rule of Criminal Procedure 29(c). The Government opposes.[1]

The evidence presented at trial revealed the following. On June 8, 2022, federal, state, and local law enforcement officers, working as part of a multiagency task force engaged in fugitive operations, were looking for an

---

[1] Doc. 149.

1

"armed and dangerous" individual who was not Defendant Deandre Cross. Deputy United States Marshal Brian Fair and Special Agent ("SA") Brittany Theriot, members of this task force, were riding together in an unmarked U.S. Marshal vehicle and following a blue vehicle associated with the fugitive. After observing the blue vehicle turn onto Arcadia Lane and park at a residence associated with the fugitive, Fair and Theriot set up surveillance. Additional law enforcement units were called to the area.

During the surveillance, Fair and Theriot observed people moving back and forth between the blue car and the Arcadia Lane residence. Theriot testified that she used binoculars in an attempt to view the individuals' faces but was unsuccessful. At some point, she observed at least two individuals exit the blue vehicle wearing "ski masks."[2] One of the individuals wearing a ski mask—Defendant Deandre Cross—walked across the street to get into the driver's seat of a white Buick vehicle.

As additional law enforcement units arrived, Theriot and Fair elected to approach the residence. Fair testified that he put his lights on and started driving toward the residence because "a white Buick LaCrosse pulled off from the street from the address [officers] were interested in."[3] Fair then parked the Marshal's vehicle on Arcadia Lane partially traversing both lanes to block vehicles from traveling on the street. Fair activated the vehicle's siren. Theriot testified that she exited the vehicle from the passenger side and drew her weapon, standing in the open space behind the opened vehicle door and the body of the vehicle. SA Theriot testified that she saw the white vehicle come "barreling" "directly towards" her and yelled for the driver to "stop the car."[4]

---

[2] Doc. 141 at 32.
[3] Doc. 140 at 93.
[4] Doc. 141 at 43–45.

Theriot testified that she thought she was going to be "crushed" between the two cars and lose her legs or be killed.[5] As a result, Theriot re-holstered her gun, jumped back into the vehicle, and reached out with her left hand to close the door. The white vehicle, driven by Defendant Cross "clipped" the edge of the open passenger door, causing it to slam shut. The door "smashed" into her arm.[6]

Defendant Cross continued driving down the street and through the neighborhood. Cross eventually hit a curb and abandoned the white vehicle, running away on foot. The abandoned vehicle at some point rolled into an occupied Rail Transit Authority bus. Law enforcement ultimately apprehended Defendant in a different neighborhood. Defendant now moves this Court for a judgment of acquittal because the evidence produced at trial is insufficient to sustain a conviction.

## LEGAL STANDARD

Under Rule 29 of the Federal Rules of Criminal Procedure, a defendant may move for a "judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later."[7] Upon such motion, a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."[8] "The standard for a sufficiency claim is high."[9] In determining whether the evidence is sufficient to sustain a conviction, a court does not "ask itself whether *it* believes

---

[5] *Id.* at 44–45.
[6] *Id.* at 48.
[7] FED. R. CRIM. P. 29(c).
[8] FED. R. CRIM. P. 29(a).
[9] United States v. Achobe, 560 U.S. 259, 263 (5th Cir. 2008).

3

that the evidence at the trial established guilt beyond a reasonable doubt."[10] "Instead, the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[11]

## LAW AND ANALYSIS

Count 1 of the Indictment charges Defendant with forcible assault on a federal officer in violation of 18 U.S.C. §§ 111(a)(1) and 111(b). For the jury to find Defendant guilty, the Government was required to prove beyond a reasonable doubt that: (1) the defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with a federal officer; (2) the federal officer was forcibly, resisted, opposed, impeded, intimidated, or interfered with while engaged in the performance of her official duties; (3) the defendant did such acts intentionally; and (4) in doing such acts, the defendant used a deadly or dangerous weapon or inflicted bodily injury.[12]

Defendant argues that the Government failed to prove "beyond a reasonable doubt that [Mr. Cross's] contact with [the U.S. Marshal's] door constituted an intentional use of force against Agent Theriot."[13] In response, the Government argues that Defendant's use of force was not only the clipping of the U.S. Marshal's door, but "the operation of a motor vehicle that he intentionally . . . drove directly at Agent Theriot, causing her, and any

---

[10] Jackson v. Virginia, 443 U.S. 307, 318–19 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282 (1966)) (emphasis in original).
[11] *Id.* at 319 (emphasis in original).
[12] Doc. 142 at 65. *Cf.* Fifth Circuit Pattern Jury Instructions § 2.07 (2019). The Court adopted the elements listed in the Fifth Circuit's Pattern Jury Instructions, only omitting from the second element that the officer was assaulted while "on account of the performance of official duties," because this was not charged in the Indictment. *See* Doc. 1.
[13] *Id.* at 5.

'reasonable person' in her situation to 'expect immediate bodily harm.'"[14] In reply, Defendant contends that the Government "improperly seeks to constructively amend the indictment by modifying the 'forcible act' that the grand jury charged."[15] The Court now considers each of Defendant's arguments in turn.

### 1. *Motion for Acquittal*

Defendant argues that the Government failed to prove beyond a reasonable doubt that he "intentionally committed a forcible act against Agent Theriot."[16] The critical evidence at trial revealed that Deandre Cross drove a white Buick down Arcadia Lane in the direction of a US Marshall vehicle that was stopped in the street with flashing lights and a siren activated. Contradictory evidence was presented as to whether the Defendant drove his vehicle directly into the path of the Marshal's vehicle or was simply trying to avoid the vehicle; what is uncontradicted is that he "clipped" the passenger door of the Marshal's vehicle causing it to slam and hit the arm of SA Theriot.

Defendant seems to argue that the statute requires the use of intentional violence upon a federal agent. As a result, without evidence that the collision was indeed intentional, no rational juror could find Defendant guilty of the offense charged and judgment of acquittal is warranted. This, however, is not an element of the charged offense under 18 U.S.C. § 111. This Court previously set forth all elements of the offense in its jury charge and declines to now reconsider and redefine them.[17]

The Court therefore considers Defendant's argument in terms of the elements of the charged offense and construes it as an allegation that the

---

[14] Doc. 149 at 6.
[15] Doc. 152 at 2.
[16] Doc. 144-1 at 6.
[17] *See* Doc. 142 at 57–69.

Government failed to carry its burden in proving two elements as listed in the Court's jury instructions on the substantive offense: (1) that the defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with a federal officer; and (2) the defendant did such act intentionally.

In addition to the evidence produced at trial and summarized above, Defendant presented expert testimony that "Mr. Cross was driving either parallel to, or angled away from, the Marshal's car when he impacted the edge of the door."[18] Because the Government stated in closing argument that this testimony "kind of makes sense," Defendant argues that no rational juror could find beyond a reasonable doubt that he intentionally committed a forcible act. The Court, however, disagrees.

No video footage of the collision was produced at trial. In the absence of such footage and noting that the heart of this case centers around the collision, the Court permitted Mr. Winkler's expert testimony as relevant and helpful to the factfinder.[19] The jury, however, is the sole judge of witness credibility and the weight to be given to each witness's testimony.[20] The Court notes that Brittany Theriot testified that she "stood there as the white car came barreling towards [her]."[21] Fair also testified that the white car was "coming toward [them]" at a speed of at least 35 or 40 miles per hour.[22] Mr. Winkler, however, testified that if Defendant hit the door at 50 miles per hour, it "would have broken the glass in the door" or "likely would have taken the door off."[23] A rational jury could have weighed any conflicting testimony in the

---

[18] Doc. 144-1 at 6 (citing Doc. 141 at 215 & 224).
[19] Doc. 121 at 8–9.
[20] *See* Kennett-Murray Corp. v. Bone, 622 F.2d 887 (5th Cir. 1980); Webster v. Offshore Food Serv., Inc., 434 F.2d 1191, 1193 (5th Cir. 1970).
[21] Doc. 141 at 43. *See also id.* at 42 ("I could see the white car coming towards me . . . .").
[22] Doc. 140 at 116.
[23] Doc. 141 at 219.

Government's favor and ultimately found that Defendant's use of the vehicle—even if he swerved at the last minute to avoid physical contact or hit the door at a speed less than 50 miles per hour—is a display of a force against SA Theriot that would reasonably inspire fear of pain, bodily harm, or death.[24]

Defendant also argues that the jail call recording and Rail Transit Authority ("RTA") video evidence produced at trial are irrelevant to the issue of whether Defendant committed a forcible act and cannot be used to satisfy the Government's burden in proving he committed a forcible act. Rather, the evidence, as Defendant asserts, is relevant to his intent "to flee from law enforcement."[25] In other words, this evidence is relevant to Defendant's intent to resist, oppose, impede, intimidate, or interfere with Agent Theriot while she was engaged in performance of official duties. Accordingly, a rational jury, considering the evidence presented at trial in a light most favorable to the Government, could find beyond a reasonable doubt that Mr. Cross (1) forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with a federal officer; and (2) the defendant did such act intentionally.

Lastly, the Court addresses Defendant's concerns regarding the Government's closing argument, wherein counsel speculated that "[m]aybe [Mr. Cross] tried to go around [Agent Theriot] or avoid her."[26] Defendant contends that, by way of this statement, the Government concedes that Defendant did not intend to clip the U.S. Marshal's car and therefore cannot

---

[24] *See* Sophin v. United States, 153 F. Supp. 3d 956, 967 (W.D. Tex. 2015) (noting that the Fifth Circuit, while not explicitly adopting this definition, has upheld convictions consistent with this definition). In *Sophin*, the Court found no "forcible act" where the defendant did not speed away, direct his car at the federal officer, or drive away in a forceful manner. *Id.* at 968. Based on the testimony presented at trial, a reasonable jury, in this case, could find that Mr. Cross sped away, directed his car at Agent Theriot, or drove away in a forceful manner.

[25] Doc. 144-1 at 7.

[26] Doc. 142 at 45.

carry its burden in proving that Mr. Cross "intentionally committed a forcible act against Agent Theriot."[27] The Court notes, however, that intent to clip a car, or intent to make physical contact, is not required. Only an intent to act by means of physical force is required,[28] and based on the evidence produced at trial, a rational jury could find that Defendant intentionally *and* by use of force assaulted, resisted, opposed, impeded, intimidated, or interfered with Brittany Theriot. Accordingly, Defendant's motion for acquittal is denied.

### 2. *Constructive Amendment*

Defendant next argues that the Government "improperly seeks to constructively amend the indictment by modifying the 'forcible act' that the grand jury charged," thereby urging a materially different theory of guilt in violation of Defendant's Fifth Amendment rights.[29] The Court, however, disagrees.

"[A]fter an indictment has been returned[,] its charges may not be broadened through amendment except by the grand jury itself."[30]

> An implicit or constructive amendment of the indictment, constituting reversible error, occurs when it permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which she was charged.[31]

---

[27] Doc. 144-1 at 6.
[28] Doc. 142 at 66. The Court instructed the jury that "[t]he government does not, however, have to prove that the defendant intended to harm Brittany Theriot." *Id.* Additionally, the Court instructed the jury that "[p]hysical force is sufficient, but physical contact is not required." *Id. See also* Fifth Circuit Pattern Jury Instructions § 2.07 (2019) (defining "forcible assault" as including "any intentional display of force that would cause a reasonable person to expect immediate bodily harm, regardless of whether the victim was injured or the threat or attempt was actually carried out").
[29] Doc. 152 at 2.
[30] United States v. Nunez, 180 F.3d 227, 230 (5th Cir. 1999) (quoting Stirone v. United States, 361 U.S. 212, 215–16 (1960)).
[31] United States v. Reasor, 418 F.3d 466, 475 (5th Cir. 2005) (internal citations omitted).

8

Thus, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him."[32]

The Indictment charges Defendant with knowingly assaulting, resisting, opposing, impeding, intimidating, or interfering with Brittany Theriot.[33] The Indictment does not, as suggested by Defendant, charge him with "intentionally clipp[ing] the U.S. Marshal's car door, causing it to slam shut and hit Agent Theriot's arm."[34] The Court notes that the Indictment charges Defendant with using a "white Buick Lacrosse" as a "deadly or dangerous weapon" in commission of the enumerated acts, which implicitly this limits the theories by which Defendant may have committed the charged crime. This does not, however, limit the Government to the theory of "intentionally clipp[ing] the U.S. Marshal's door."[35]

The Government asserts that Mr. Cross's "use of force was the operation of a motor vehicle that he intentionally—willfully and knowingly—drove directly at Agent Theriot, causing her, and any 'reasonable person' in her situation to 'expect immediate bodily harm.'"[36] Here, the Indictment charges Defendant with a series of proscribed acts that clearly encompass this alleged forcible act. A conviction based upon this theory therefore would not result in a conviction for committing an act in a manner different from that alleged in the Indictment.[37] Accordingly, the Court finds no implicit or constructive amendment of the Indictment.

---

[32] *Id.* (quoting *Stirone*, 361 U.S. at 215–16).
[33] *See* Doc. 1.
[34] Doc. 152 at 1.
[35] In fact, the U.S. Marshal's vehicle is not referenced in the Indictment.
[36] Doc. 149 at 6.
[37] *Cf.* United States v. Salinas, 654 F.2d 319, 324 (5th Cir. 1981) (finding a constructive amendment of the indictment where a defendant was charged with "misapplying funds as a director of the bank," and the evidence at trial showed that "he was not in fact a director when the transactions at issue took place"). By way of example, a constructive amendment would result if the Court instructed the jury that it could convict Mr. Cross for forcibly

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion is **DENIED**.

New Orleans, Louisiana this 3rd day of May, 2024.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

assaulting *any* federal officer or if the evidence at trial showed that he used a blue Jeep Wrangler as the alleged deadly or dangerous weapon. *See id.*